IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

YVONNE E. WILSON,

      Plaintiff,                             05cv1748

     v.                                 ELECTRONICALLY FILED

CHILDREN'S MUSEUM OF PITTSBURGH,

      Defendant.

## Memorandum Opinion

This is an action for employment discrimination.  Plaintiff, Yvonne Wilson (Wilson) alleges that defendants, Children's Museum of Pittsburgh (Children's Museum) treated her disparately, harassed her, retaliated against her, and wrongfully terminated her on the basis of age, race, and disability under the Age Discrimination in Employment Act (ADEA), Title VII of the Civil Rights Act of 1964, the Pennsylvania Human Relations Act (PHRA), and the Americans with Disabilities Act (ADA), respectively.  Plaintiff further alleges that her supervisor, Jane Werner (Werner) aided and abetted Children's Museum under the PHRA. Finally, plaintiff advances additional common law claims for intentional and negligent infliction of emotional distress and negligence.  Pending before this Court is defendant's motion for summary judgment (doc. no. 42).  After careful consideration, and for the reasons that follow, this Court will GRANT defendant's motion for summary judgment.

I.      **Facts**

      The facts may be fairly summarized as follows:[1]  Plaintiff, who is an African-American

---

[1]The Court notes that although plaintiff has not complied with this Court's Practices and Procedures because she has failed to file a joint statement of undisputed material facts, in the interests of efficiency and judicial economy, this Court has considered the facts as set forth in defendant's concise statement of material facts (doc. no. 44) and plaintiff's responsive statement


female and is 57 years of age, was hired by Werner, who is the Executive Director of the Children's Museum, to work as her Executive Administrative Assistant on January 24, 2000. Warner, who became the Executive Director in May of 1999, is a Caucasian female and is 47 years of age.

From the years 2000 to 2004, plaintiff received favorable performance evaluations and reviews, and she received several merit increases throughout her employment.

Plaintiff has a long list of alleged impairments/disabilities including osteoarthritis in her spine, fingers, neck and knees, a heart murmur, high blood pressure, an abdominal hernia, a cyst of her liver, spots on her lungs, asthma, an atrophic kidney, carpal tunnel problems, venostatis, digestive problems, eye problems and pain in her right shoulder.  Plaintiff gave defendant written requests for accommodations from her doctor on April 19, 1999, April 28, 2004, and December 6, 2004.  Plaintiff contends that she made the following requests for accommodations during her employment with Children's Museum: a new chair; a wrist rest; accommodation for standing; accommodation for lifting; having her desk lifted higher; and an accommodation for her doing the mail.  Defendant accommodated plaintiff with a new chair, a wrist rest, a foot rest, a wooden platform to set the computer screen at a more appropriate eye level, and a higher desk.  Plaintiff was never required to lift more than ten pounds.  Although the note from plaintiff's doctor requested that plaintiff's standing be limited, Wilson requested that she discontinue doing the mail and supplies and that she not be required to do "floor hours" (walking around the museum and speaking to visitors).  Responsibility for the supplies was taken away from plaintiff in August or September of 2004; however, prior to the supply duties being taken from plaintiff,

_____

of material facts (doc. no. 54).

other employees helped her in performing those duties.  Plaintiff was required to perform two hours of floor duty per month, and according to defendant, Werner never required plaintiff to work beyond her restrictions.  Although plaintiff was required to do the mail until her employment was terminated, she was accommodated by having interns available to assist her.

Plaintiff filed a complaint with the Pennsylvania Human Relations Commission ("PHRC") on December 28, 2004 claiming retaliation, but plaintiff did not tell anyone at Children's Museum that she had filed the complaint with the PHRC.  Werner testified that she did not become aware of the complaint until after plaintiff was terminated.  According to plaintiff, she was retaliated against because someone placed the mail machine on her desk and someone broke into her desk and took a letter from her doctor.  Plaintiff contends that the placement of the mail machine was disrespectful and cruel and that the staff did it to make fun of her.  Werner, however, testified that although she did not request that the mail machine be placed on plaintiff's desk, that she did direct someone to place the mail machine in plaintiff's office as an accommodation.  Plaintiff further alleges that she was harassed by being denied access to Museum charge cards, which she needed to make arrangements for Werner.

In early November 2004, plaintiff requested a meeting with Werner and Cathy Cicco (Cicco) (Human Resources consultant to Children's Museum) to discuss a number of workplace issues, and Cicco took notes of that meeting.  Among the outcomes from the November 2004 meeting was that Werner was to complete and review a job description for plaintiff's job that outlined her essential job functions and responsibilities, and that they would meet again to discuss plaintiff's complaints and discuss the proposed position description for plaintiff.

After the meeting, Werner and Cicco consulted about the job description and provided

plaintiff with a copy of the proposed job description on November 22, 2004.  Plaintiff provided a copy of the job description to her doctor but she never discussed the proposed job description with Werner.  Plaintiff never told either Cicco or Werner that she could not perform any of the duties on the job description, nor did she request any accommodations in connection with her receipt of the new job description.  The position description, which allegedly added assignments to plaintiff, was never agreed to or formalized, and the description was not finalized or published until after plaintiff's employment was terminated.  On December 6, 2004, plaintiff provided Rebecca McNeil (McNeil), who is Children's Museum Financial Director, with a copy of the letter from her doctor authored on that date regarding plaintiff's health problems and resulting limitations.  McNeil then provided a copy of that letter to Cicco, and Cicco indicated that she intended to obtain permission from plaintiff to communicate with plaintiff's physician about the contents of the letters.  Cicco never contacted plaintiff's physician prior to her termination.

On December 9, 2004, plaintiff sent Cicco an email proposing that Werner, Cicco and plaintiff meet on December 16, 2004 to further discuss the "mail situation" and the added job responsibilities.  On December 13, 2004, plaintiff sent another email to Cicco canceling the December 16, 2004 meeting and "reserving further discussion until [she met] with the Personnel Committee."

On January 13, 2005, Werner sent plaintiff an email arranging a meeting with Tom Mole (Mole), a board member and chairman of the Personnel Committee, for that day.  However, when plaintiff failed to attend the meeting, Werner called plaintiff and plaintiff allegedly refused to meet with them.  Plaintiff did agree to meet with Mole and Werner in February.

Soon after plaintiff refused to meet with Mole and Werner, Werner and Cicco went to

plaintiff's office to discuss the proposed position description and plaintiff's ability to perform her job duties in light of her alleged impairments.  When Werner and Cicco appeared in plaintiff's office, plaintiff refused to discuss the issues and became agitated.  Werner and Cicco then left plaintiff's office and when they returned to plaintiff's office, plaintiff refused to speak with Werner and Cicco and left her office.  Werner and Cicco followed plaintiff onto the second floor balcony where plaintiff then allegedly yelled at Werner and Cicco.  Plaintiff disputes the contention that she "yelled," however, the parties agree that Werner never raised her voice when speaking with plaintiff.  Museum visitors, as well as a number of administrative offices, had access to the area on the second floor balcony where the altercation took place.  Jennifer Albaugh, a development assistant for Children's Museum, who was in her office located near the site of the altercation, heard plaintiff outside her office saying words to the effect "leave me along Jane," "stay away from me," and "stop harassing me, I have a heart condition."  Several other employees gave similar recounts and all employees who heard the incident testified that they only heard plaintiff raise her voice, no one heard Werner or Cicco.

After the incident, plaintiff then returned to her office, locked her door, and called paramedics.  The Pittsburgh paramedics transported plaintiff to the hospital.

By letter dated January 18, 2005, Werner sent a letter to plaintiff terminating her employment as of that date.

Werner's stated reason for terminating plaintiff was that plaintiff accused Werner of harassing her in a voice loud enough for Museum visitors and other staff members to hear and because of plaintiff's insubordination on January 13, 2005.  Plaintiff disagrees and contends that she was terminated because of "frustration with her perceived disabilities and the inconvenience

5

of the accompanying accommodations, and in a spirit of retaliation for [plaintiff's] ongoing complaints about Ms. Werner's conduct and harassment."  (Doc. No. 54, page 18, paragraph 236).

Werner replaced plaintiff with a 59 year old female who is deaf in one ear and requires accommodations in the form of using a tape recorder to record the Board meeting minutes and being seated where she can hear.

Defendant contends that plaintiff has been permanently and totally disabled and unable to be gainfully employed in any position with the Children's Museum from January 13, 2005 until the present, and that she was determined by the Social Security Administration to be disabled as of January 13, 2005.  Plaintiff denies these facts, however, because plaintiff failed to respond to defendant's request for admission, pursuant to Fed. R. Civ. P. 36, said requests are thereby deemed admitted.

Plaintiff advances other claims of race discrimination and age discrimination and in support, she contends that she was not shown proper respect by other employees including Rebecca McNeil, Kelly Campbell, Grace Kane and George Brzezinski (Director of Visitor Services).  Plaintiff makes numerous allegations against these staff members including that she developed a safety program and that Brzezinski, a male Caucasian, presented the program at a conference instead of her.  Plaintiff also alleges Werner discriminated against her because of her race by not introducing plaintiff to white "VIPs" visiting Children's Museum, but introducing her only to black VIPs; that employee Dennis Rhawn engaged in racial discrimination by being "very rude to [her], extra rude" (doc. no. 44, page 19, paragraph 80); and, that employee Kelly Campbell treated her "very bad," by not responding to plaintiff's emails, and wrongfully telling

plaintiff that Children's Museum did not have direct deposit.

## II.    Standard of Review

Summary judgment under Fed.R.Civ.P. 56(c) is appropriate "'if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law." *Woodside v. School Dist. of Philadelphia Bd. of

Educ.*, 248 F.3d 129, 130 (3d Cir. 2001), *quoting Foehl v. United States*, 238 F.3d 474, 477 (3d

Cir.2001) (citations omitted).  In deciding a summary judgment motion, the court must "view the

evidence ... through the prism of the substantive evidentiary burden" to determine "whether a

jury could reasonably find either that the plaintiff proved his case by the quality and quantity of

the evidence required by the governing law or that he did not." *Anderson v. Consolidated Rail

Corp.*, 297 F.3d 242, 247 (3d Cir. 2002), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

254 (1986).

When the non-moving party will bear the burden of proof at trial, the moving party's

burden can be "discharged by 'showing' -- that is, pointing out to the District Court -- that there

is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477

U.S. 317, 325 (1986).  If the moving party has carried this burden, the burden shifts to the non-

moving party who cannot rest on the allegations of the pleadings and must "do more than simply

show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.

v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Petruzzi's IGA Supermarkets, Inc. v. Darling-

Delaware Co.*, 998 F.2d 1224, 1230 (3d Cir. 1993). Thus the non-moving party cannot rest on

the pleadings, but instead must go beyond the pleadings and present "specific facts showing that

there is a genuine issue for trial," Fed.R.Civ.P. 56(e), and cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (*citing Celotex*, 477 U.S. at 325 (1986)). The non-moving party must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." *Simpson v. Kay Jewelers, Div. Of Sterling, Inc.*, 142 F. 3d 639, 643 n. 3 (3d Cir. 1998), *quoting Fuentes v. Perskie*, 32 F.3d 759, 762 n. 1 (3d Cir. 1994).

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.' *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)." *Marino v. Industrial Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004.) *See also Doe v. County of Centre, PA*, 242 F.3d 437, 446 (3d Cir. 2001) (court must view facts in the light most favorable, draw all reasonable inferences, and resolve all doubts, in favor of the nonmoving party ).

## III.   Discussion

In analyzing claims for disparate treatment, harassment and retaliation under the ADEA, Title VII, the ADA, and the PHRA, we apply the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under this scheme: (1) plaintiff bears the burden of establishing a prima facie case of discrimination; (2) the burden of production then shifts to defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action; (3) if defendant meets its burden of production, plaintiff must prove by a preponderance of the evidence that defendant's proffered reason was a pretext for discrimination.

*See McDonnell Douglas*, 411 U.S. at 802; *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-508 (1993).

To establish a prima facie case of age discrimination, plaintiff must show that: (1) she is forty or older; (2) she is qualified for the position in question; (3) she suffered an adverse employment decision; and (4) she was replaced by a sufficiently young person or sufficiently younger persons were treated more favorably so as to create an inference of discrimination. *See Sempier v. Johnson & Higgins*, 45 F.3d 724, 728 (3d Cir. 1995); *Berndt v. Kaiser Aluminum & Chem. Sales, Inc.*, 789 F.2d 253, 257 (3d Cir. 1986)(citing *Massarsky v. General Motors Corp.*, 706 F.2d 111, 118 (3d Cir. 1983)).

To establish a prima facie case of racial discrimination, plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for her position; and (3) she was discharged "under conditions that give rise to an inference of unlawful discrimination." *Geraci v. Moddy-Tottrup, Int'l Inc.*, 82 F.3d 578, 580 (3d Cir. 1996)(quoting *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

To establish a prima facie case of discrimination under the ADA, plaintiff must demonstrate that: (1) she was disabled within the meaning of the ADA; (2) she was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation by the employer; and (3) she has suffered an adverse employment decision as a result of discrimination.

To establish a prima facie case of retaliation, plaintiff must demonstrate that: "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; (3) there was a causal connection between her participation in the protected activity

9

and the adverse employment action." *Moore v. City of Philadelphia, et al.*, — F.3d — , 2006 WL 2492256 (3d Cir. 2006)(quoting *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995)).

Although the parties dispute whether plaintiff has established a prima facie case of the various forms of discrimination, we will assume for the sake of argument only that she has.[2]  As such, the burden shifts to defendant to proffer a legitimate, nondiscriminatory reason for the adverse employment action.  *See Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994)(citing *McDonnell Douglas*, 411 U.S. at 802).

Defendant alleges that on January 13, 2005, plaintiff became extremely agitated, was insubordinate and yelled at Werner, in a place and manner that could be heard by staff, and visitors of the Children's Museum.  Werner concluded that plaintiff's conduct was unacceptable and terminated Wilson's employment by letter effective January 18, 2005.  Although plaintiff disputes defendant's contention that she yelled at Werner, this Court finds that defendant has proffered legitimate non-discriminatory reasons for plaintiff's termination.  *See*, *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254 (1981)("defendant need not persuade the court that it was actually motivated by the proffered reasons").

Thus, under the final prong of the *McDonnell Douglas* analysis, the burden shifts to plaintiff to produce sufficient evidence to withstand summary judgment on the issue of pretext. *See McDonnell Douglas*, 411 U.S. at 802.  Plaintiffs must point to some evidence, direct or

---

[2]This Court is inclined to agree with defendant that plaintiff has failed to set forth a prima facie case of discrimination on the basis of age, race or disability.  With regard to plaintiff's allegations of age discrimination, because she was replaced by a 59 year old female with a disability, she has failed to set forth a prima facie case of discrimination on the basis of her age. Nonetheless, in an abundance of caution, the Court will still perform the *McDonnell Douglas* analysis (even though plaintiff incorrectly states this burden shifting analysis is not applicable to her).

10

circumstantial, from which a fact-finder could reasonably either (1) disbelieve defendant's articulated legitimate reasons or (2) believe than an invidious discriminatory reason was more likely than not a motivating or determinative cause of defendant's action. *See Fuentes*, 32 F.3d at 764; *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 523 (3d Cir. 1992)(citation omitted). In other words, plaintiffs must demonstrate such "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in defendant's proffered legitimate reasons such that a "reasonable fact-finder could rationally find them unworthy of credence and hence infer that the proffered nondiscriminatory reasons did not actually motivate" defendant's action. *Fuentes*, 32 F.3d at 764-765 (quoting *Ezold*, 983 F.2d at 531). Another way to establish that discrimination was more likely than not a cause of the employer's action is to show that the employer has treated more favorably similarly situated persons without the protected class. *Simpson v. Kay Jewelers, Div. Of Sterling, Inc.*, 142 F.3d 639, 645 (3d Cir. 1998)(citing *Fuentes*, 32 F.3d at 765).

In her brief in opposition to defendant's motion for summary judgment, plaintiff does not explicitly set forth any arguments supporting her claims that the adverse employment actions were pretextual. However, even a liberal reading of plaintiff's brief does not produce any evidence of pretext. Plaintiff's bald allegations, without more, do nothing to establish any inconsistencies, weaknesses or implausibilities for defendant's actions. Absent from the record is any evidence to support her conclusory allegations that her age, race and/or disability played any part in the employment actions which were taken against her.

Viewing the facts in the light most favorable to Wilson, this Court finds that she has failed to establish sufficient evidence from which a reasonable fact-finder could rationally find

that the defendant's articulated reasons for its employment action were unworthy of credence, or

that the decision to terminate her was motivated by her age, race, or disability.[3] Where a plaintiff

is unable to show weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions

in defendant's reasons for its action, summary judgment is required.  *See Fuentes*, 32 F.3d at 756.

Further, to the extent plaintiff makes a claim for harassment (hostile work environment),

said allegations are similarly unconvincing.  In order to establish a claim for hostile work

environment, plaintiff must establish that: (1) she suffered intentional discrimination because of

her protected status; (2) the discrimination was "pervasive and regular"; (3) she was adversely

affected by the discrimination; (4) the discrimination would adversely affect a reasonable person

of the same protected status; and (5) that respondeat superior liability applies.  *See Kunin v. Sears*

*Roebuck & Co*, 175 F.3d 289, 293 (3d Cir. 1999)(citing *Andrews v. City of Philadelphia*, 895

F.2d 1469, 1482 (3d Cir. 1990)).  Further, the work environment must be shown to be objectively

hostile or abusive and the plaintiff must have perceived it as hostile or abusive.  *See Harris v.*

*Forklift Sys., Inc.*, 510 U.S. 17, 22  (1993).  Courts must consider all of the circumstances,

including, "the frequency of the discriminatory conduct; its severity; whether it is physically

threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes

with an employee's work performance."  *Harris*, 510 U.S. at 23.

Plaintiff contends  in support of her claim for hostile work environment that she asked

Werner for a space heater and a footrest and these requests, although ultimately approved and

provided, were not handled for "several months" (doc. no. 54, at page 10).  These allegations do

---

[3]Because plaintiff's claims for discrimination fail under Title VII, the ADEA, the ADA
and the PHRA, plaintiff's claims of "aiding and abetting" against Werner under the PHRA also
fail.

not come close to rising to the level of an "objectively hostile or abusive" work environment. Plaintiff has produced no evidence, other than her own conclusory allegations, that these actions, or any other alleged actions, constitute a hostile work environment.  Although it appears that plaintiff perceived that she was not shown appropriate respect by various employees at various times, she points to no evidence linking any alleged harassing conduct to her age, race or alleged disability.  Further, plaintiff has failed to even argue that any alleged harassing conduct was pervasive and regular, that she was adversely affected by such alleged discriminatory action, or that this alleged discriminatory action would adversely affect a reasonable person of the same protected status.  For all these reasons, plaintiff's claims for "harassment"/hostile work environment fails.

Further, plaintiff's claim of "inadequate" compensation for 2003 is time barred because her claim was not filed within 300 days (or 180 under the PHRA) of the alleged discriminatory conduct, and plaintiff has not alleged that this action was part of a continuing violation. *West v. Philadelphia Electric Co.*, 45 F.3d 744, 754 (3d Cir. 1995).

Finally, as for plaintiff's common law claims of intentional and negligent infliction of emotional distress, these claims are preempted by the Pennsylvania Workers' Compensation Act, 77 P.S. § 1 *et seq.,* because it is the exclusive remedy for employees asserting intentional and negligent infliction of emotional distress claims based on alleged discriminatory treatment by employers.  *Matczak v. Frankford Candy and Chocolate Co.*, 136 F.3d 933, 940 (3d Cir. 1997). Further, plaintiff's common law negligence claim is preempted by the PHRA unless the claim is factually independent of a discrimination claim.  *Stell v. PMC Technology, Inc.*, 2005 WL 2050297 (E.D. Pa. August 24, 2005).  Plaintiff's negligence claim is that defendant failed to

13

properly hire, supervise and train its staff and is based on the same factual allegations of

employment discrimination as her claims under the PHRA.  Therefore, the negligence claim is

preempted by the PHRA.

      For all these reasons, defendant's motion for summary judgment (doc. no 42) will be

granted.

      An appropriate order will follow.


s/Arthur J. Schwab _____
Arthur J. Schwab
United States District Judge


cc:    All counsel of record

14